In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-05-00856-CR

____________


OSCAR LEE BURKS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court 

Harris County, Texas

Trial Court Cause No. 1010004 






O P I N I O N


 Appellant, Oscar Lee Burks, pleaded not guilty to the offense of aggravated
robbery and pleaded true to two felony convictions alleged as enhancement. A
jury found him guilty of the lesser offense of robbery and assessed punishment at
45 years in prison, see Tex. Pen. Code Ann. § 29.02 (Vernon 2003), enhanced by
the prior felony convictions. See Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp.
2005). In three points of error, appellant contends (1) that the trial court
committed fundamental error and violated his Sixth Amendment right to counsel
by requiring that appellant discontinue speaking with his attorney while the jury
was present in the courtroom for final arguments in the punishment phase of the
trial; (2) that the trial court abused its discretion by admitting evidence of
extraneous offenses during the guilt-innocence phase of the trial; and (3) that the
trial court caused appellant egregious harm by not including burden-of-proof
instructions regarding extraneous offenses in the jury charge on punishment. 

 We affirm.

Factual Background Late one evening in December 2004, after visiting his ailing mother at a
Houston hospital, appellant went to the home of Shirley Williams. Complainant
Smith, who was also present, was watching television with Williams' daughter. 
Appellant had been at the house for about two hours when he asked Smith to drive
him to a Jack-In-The-Box restaurant to get something to eat. Smith had never met
appellant before and hesitated, but later agreed. 

 While Smith was driving, appellant said that he had to get money from his
girlfriend and asked Smith to drive to her house. Smith complied, but when he
pulled over at a house at appellant's direction, appellant ordered him out of the car. 
Turning to face appellant, who was holding the tip of a five-inch, single-blade
knife close to Smith's throat, Smith complied. As Smith left the car, appellant
moved to the driver's seat and drove the car away without Smith's permission. 
Smith dialed 9-1-1 on his cell phone as he gave chase, but appellant got away. 
Three days later, Smith positively identified appellant in a photo spread 

 Six days later, in response to an anonymous tip, three Houston Police
Department (HPD) officers drove an unmarked van to a location where they saw
appellant walking northbound on the 500 block of Schweikhardt. Officer Payne,
who was in plain clothes but also wearing a jacket marked "POLICE," got out of
the vehicle as another officer drove toward the curb. Appellant took flight on foot
as he saw Payne, but Payne apprehended appellant after following him into an
apartment-complex area, where appellant stumbled and fell. After he was arrested,
appellant told Officer Villareal, a robbery investigator with HPD, that appellant
intended to be the getaway driver for two planned robberies, using the car stolen
from Smith. Police conducted surveillance at the two locations that appellant
disclosed, but the robberies never occurred. 

 Testifying in his own defense, appellant acknowledged that he took Smith's
car, but denied using a weapon when he ordered Smith to get out of the car. 
Appellant also acknowledged that he told an officer, while under arrest, that he
planned to be the getaway driver for the future robberies, but appellant also stated
that he was lying, because he was "willing to tell them anything" in order to attend
his mother's funeral. Appellant admitted his prior convictions for the following
offenses: (1) unauthorized use of a motor vehicle on May 29, 1990; (2) possession
of a controlled substance on September 13, 1991; (3) failure to identify to a police
officer on May 17, 2000; (4) theft on March 19, 1990; and (5) theft on August 16,
1988. (1) 

Sixth Amendment Right to Counsel


 In his first point of error, appellant contends that the trial court violated his
right to counsel, as guaranteed by the Sixth Amendment of the United States
Constitution, by barring him from speaking with his attorney during the
punishment phase of trial. See U.S. Const., amend. VI. (2) 

 The record reflects that the punishment phase of the trial was brief; it began
with appellant's arraignment on the first and second paragraphs alleged as
enhancement, to which he pleaded "true." (3) Immediately thereafter, the State
moved to reoffer all of the evidence from the guilt-innocence phase of the trial.
The State granted this motion and the State's request to introduce into evidence the
signed stipulation, in which appellant admitted his ten prior convictions and
sentences, with the judgments corresponding to those convictions. The trial court
also granted the prosecutor's unopposed motion to read the text of the stipulation
to the jury. The State rested its case after reading the stipulation. The punishment
phase concluded with appellant's counsel's reoffer of all testimony and evidence
from the guilt-innocence portion of the trial "from the defense standpoint" and
counsel's announcement that the defense, too, had rested. 

 Immediately thereafter, the trial court asked to see both attorneys at the
bench, where an off-record discussion occurred, after which the trial court removed
the jury from the courtroom. After the jury left the courtroom, the following
exchange took place on the record, with appellant present:

 THE COURT: Mr. Greenwood. (4)

 GREENWOOD: Your Honor, can I have an instruction to Mr.
Burks, I've been sitting there and he has been
sitting whispering in my ear threatening me and I
am just--I am getting ready to explode in front of
the jury because he is threatening me.


 THE COURT: Mr. Burks, you are making a very serious mistake,
sir, to behave that way.


 APPELLANT: He told me I threatened him. He is supposed to be
my lawyer. I'm asking why he ain't objecting to
some of that stuff that he [sic] allowing this
prosecutor to present before the jury and if that is
threatening him, I apologize.


 THE COURT: You apologize to your lawyer.


 APPELLANT: I'm just asking why he ain't objecting to some of
this - we went through this punishment phase and
the part about the enhancements I already said it
was true and I [sic] just asking him why was he
allowing him to re-bring it up again and again and,
I mean, I'm just asking him to explain it to me.


 THE COURT: Mr. Greenwood is an excellent lawyer. He knows
the rules of evidence and that is what is happening
in your case. I am telling you sir, that behavior of
that type in front of the jury can only hurt you. 
You must sit quietly. If I need to send the jury out
again, we will remove you, have you removed
from the courtroom, and you will not be able to
hear the [closing] arguments. Understand? You
must be quiet. 


 APPELLANT: Excuse me, so are you saying I can't ask him no
[sic] questions pertaining to what he [is] doing?


 THE COURT: You may not talk to him now in front of the jury.


 APPELLANT: Yes, ma'am.


 GREENWOOD: Thank you, Your Honor.


Closing arguments proceeded upon the jury's return, the first by appellant's
counsel, followed by the prosecutor. 

 A. Standard of Review: Abuse of Discretion

 Appellant contends that the trial court's ruling "placed a sustained barrier to
communications between appellant and his counsel" and thus constituted federal-constitutional, or "structural," error that is, therefore, exempt from harm analysis
under rule 44.2 of the Rules of Appellate Procedure. See Tex. R. App. P.
44.2(a)-(b) (providing for two levels of harm assessment). 

 Structural error is a "'defect affecting the framework within which the trial
proceeds,'" as opposed to "'an error in the trial process itself.'" Johnson v. United
States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997) (quoting Arizona v.
Fulminante, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991)). But, this Court
may not review and analyze a claim of error as structural error unless the United
States Supreme Court has defined the error as structural, i.e., federal constitutional
error. See Gray v. State, 159 S.W.3d 95, 97 (Tex. Crim. App. 2005). 

 The Supreme Court has classified only total deprivation of counsel as
structural error. Johnson, 520 U.S. at 468-69, 117 S. Ct. at 1549; (5) see also
Johnson v. State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (noting same). 

 The ruling that appellant contends violated his Sixth Amendment rights
occurred after the jury had found appellant guilty of the lesser offense of robbery,
in the guilt-innocence phase of the trial, and after the State and appellant had
concluded their respective evidence for the punishment phase of the trial and had
rested. All that remained was final summation and arguments to the jury. The
effect of the trial court's ruling was that appellant could not speak to his counsel
while the jury was present in the courtroom during his attorney's or the
prosecutor's summation and argument. 

 Settled law recognizes that counsels' summation and argument to the jury on
punishment is a "critical" stage for purposes of a defendant's right to counsel. See
generally Herring v. New York, 422 U.S. 853, 857-62, 95 S. Ct. 2550, 2553-55
(1975). The ruling challenged here, however, occurred when summation and
argument for the punishment phase were all that remained of the trial. 
Consequently, there is no basis on which appellant may contend that the trial
court's ruling deprived appellant of counsel throughout the entire trial. See
Johnson, 169 S.W.3d at 229-30, 235. Because appellant asserts a claim of trial
error, by challenging a particular ruling within the trial, as opposed to a defect that
affected the framework of the entire trial, there is also no basis on which appellant
may contend that the trial court's error amounted to federal-constitutional, i.e.,
structural, error. See id. at 228-29 (citing Fulminante, 499 U.S. at 309-10, 111 S.
Ct. at 1264); Ramirez v. State, 76 S.W.3d 121, 130 (Tex. App.--Houston [14th
Dist.] 2002, pet. ref'd). 

 The abuse-of-discretion standard controls when we review a contention that
a trial-court ruling deprived a criminal defendant of counsel during a portion of the
trial. See Perry v. Leeke, 488 U.S. 272, 282, 109 S. Ct. 594, 601 (1989) (upholding
discretionary restriction of defendant's consultation with counsel during 15-minute
recess between conclusion of cross-examination testimony of defendant and
beginning of redirect-testimony of defendant by his own counsel); Geders v.
United States, 425 U.S. 80, 86-91, 96 S. Ct. 1330, 1334-37 (1976) (holding that
17-hour prohibition against conferring with counsel "about anything," after
defendant concluded direct examination and before cross-examination by State
began, violated Sixth Amendment; further explaining that abuse-of-discretion
standard applies, because trial court "must meet situations as they arise and to do
this must have broad power to cope with the complexities and contingencies
inherent in the adversary process"); see also Ramirez, 76 S.W.3d at 130
(upholding, as proper exercise of discretion, trial court's removing disruptive
defendant from courtroom when trial court "lacked reason to believe that [the]
misbehavior would cease"); Burks v. State, 792 S.W.2d 835, 837-38 (Tex.
App.--Houston [1st Dist.] 1990, pet. ref'd) (upholding expulsion of "continuously
nonresponsive and disruptive" defendant from courtroom as proper exercise of
discretion vested in trial court pursuant to Supreme Court precedent and thus
nonviolative of constitutional rights) (citing Illinois v. Allen, 397 U.S. 337,
342-43, 90 S. Ct. 1057, 1061 (1970)); Dotson v. State, 785 S.W.2d 848, 854 (Tex. 
App.--Houston [14th Dist.] 1990, pet. ref'd) (upholding removal of defendant
from courtroom based on "wide discretion" afforded trial courts to respond to
disruptive defendants in order to maintain "dignity, order, and decorum" that are
essential to court proceedings) (citing Allen, 397 U.S. at 342-43, 90 S. Ct. at
1061).

 We analyze questions committed to the trial court's exercise of discretion by
inquiring whether the trial court acted without reference to guiding rules and
principles or, stated otherwise, whether the court acted arbitrarily or unreasonably.
See Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). If a trial court's
discretionary ruling falls "within the zone of reasonable disagreement," we must
affirm. Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). (6)
 

B. Discretion to Restrict Appellant's Disruptive Behavior before Jury 


 Though the Sixth Amendment right to counsel is absolute, settled law
subjects exercise of the right to the needs of sound judicial administration in order
that the right not be manipulated in a manner that obstructs the judicial process or
interferes with administration of justice. See Green v. State, 840 S.W.2d 394, 408
(Tex. Crim. App. 1992) (noting same in context of counsel's motion to withdraw
due to difficulty in contacting defendant); Medley v. State, 47 S.W.3d 17, 22-23
(Tex. App.--Amarillo 2000, pet. ref'd) (noting same in context of defendant's
request to withdraw waiver of right to counsel). Thus, not all restrictions on a
defendant's ability to confer with counsel violate the Sixth Amendment. Morris v.
Slappy, 461 U.S. 1, 11, 103 S. Ct. 1610, 1616 (1983); see Perry, 488 U.S. 272,
281-84, 109 S. Ct. 594, 600-02; Medley, 47 S.W.3d at 23. 

 The record here does not show what conduct by appellant precipitated the
off-the-record discussion conducted by the trial court off the bench. But, the
record demonstrates clearly that appellant's trial counsel requested that appellant
be admonished about his conduct, including the threats that appellant's counsel
reported to the trial court. In addition to requesting the admonishment, appellant's
counsel did not object when the trial court instructed that appellant not speak with
his counsel while the jury was present. Because the record thus reflects that the
trial court and appellant's trial counsel concurred that the admonishment was
necessary, we may infer that appellant's disruptive behavior warranted the
instruction. See Ramirez, 76 S.W.3d at 129.

 The trial court's prohibition here differs in an important respect from the
sequestrations in Perry, on which the State relies and in which the Supreme Court
ruled there was no Sixth Amendment violation, and Geders, on which appellant
relies and in which the Supreme Court rejected a restriction on Sixth Amendment
grounds. Both cases involved prohibitions against communications between the
defendant and his counsel while the defendant was testifying. See Perry, 488 U.S.
at 282, 109 S. Ct. at 601, Geders, 425 U.S. at 86, 96 S. Ct. at 1334. The trial
court's restriction in this case occurred after appellant had completed his
testimony. In addition, the restriction falls short of categorically prohibiting
appellant from conferring with his counsel. Rather, the trial court narrowly
tailored its instructions to the exigencies that mandated the prohibition,
specifically, the presence of jurors who could observe appellant's confrontations
with his counsel. The restriction applied only when the jury was present to observe
any communications. 

 Furthermore, the trial court's restriction occurred when final arguments on
punishment were all that remained of the trial proceedings. As our sister court has
noted, because final argument and summation are necessarily limited to the
evidence previously presented, there was no significant need for appellant to
discuss matters with his counsel: his role at that point was to listen. See Ramirez,
76 S.W.3d at 130. Because the State waived its right to proceed first for final
arguments, appellant's counsel had to present his summation and final argument on
punishment immediately after the trial court instructed appellant to refrain from
speaking with his counsel. As the record reflects, appellant's counsel presented a
forthright and logical request that the jury impose only the mandatory, minimum
sentence of 25 years. 

 Finally, appellant's conduct in this case falls far short of the expulsion and
removal measures that became necessary and were upheld in Ramirez, Burks, and
Dotson in the face of those defendants' conduct. This Court and our sister court
have upheld removal of the defendant as consistent with the discretion vested in
trial courts, by Illinois v. Allen, to maintain the dignity, order, and decorum that are
"essential to the proper administration of criminal justice." See Ramirez, 76
S.W.3d at 129-30; Burks, 792 S.W.2d at 837-38; Dotson, 785 S.W.2d at 854 (all
quoting Allen, 397 U.S. at 342-43, 90 S. Ct. at 1061). Though the trial court's
ruling here did not result in removal of the appellant from the courtroom, the same
principles that warrant the trial court's exercise of its discretion to exclude a
defendant from the courtroom in a proper case necessarily encompass the trial
court's exercise of its discretion to order the less-harsh remedy of requiring that
appellant remain "quiet" and not speak with his counsel while the jury was present
in the courtroom.

 For these reasons, we hold that appellant has not demonstrated, under the
governing principles cited above, that the trial court abused its discretion by
instructing appellant to refrain from speaking with his trial counsel while the jury
was present in the courtroom during the remainder of the punishment trial. 

 We overrule appellant's first point of error. 

Extraneous Offenses


 In his second point of error, appellant contends that, because the State did
not comply with the notice requirements of rule 404(b), the trial court abused its
discretion by admitting the "extraneous offense" evidence that appellant attempted
to evade arrest and disclosed to an investigating officer that he was to participate in
two planned robberies. See Tex. R. Evid. 404(b). In his third point of error,
appellant argues that he was egregiously harmed by the trial court's failure to
include burden-of-proof instructions regarding extraneous offenses in the charge to
the jury for the punishment phase of the trial. We address these points together.

A. Rule 404(b) Notice Requirement

 Appellant's counsel objected at trial to evidence that appellant fled when an
officer tried to arrest him and that, while under arrest, he told an investigating
officer that he intended to use Smith's car in two planned robberies. Appellant's
counsel argued that the evidence was inadmissible because the State did not
comply timely with appellant's pretrial motions requesting notice of extraneous
offenses. See Tex. R. Evid. 404(b). The trial court overruled appellant's
objections. We review these rulings for abuse of discretion and must uphold the
trial court's admissibility ruling if it falls "within the zone of reasonable
disagreement." Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). 
Conversely, we must reverse, for abuse of discretion in admitting evidence if the
trial court's ruling "is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree." McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005). 

 Evidence of extraneous offenses, i.e., "other crimes, wrongs, or acts" is
inadmissible "to prove the character of a person in order to show action in
conformity" with that character. Tex. R. Evid. 404(b). An exception to this rule
of inadmissibility provides that evidence of other crimes, wrongs, or acts may be
admissible for another purpose, for example, to prove "motive, opportunity, intent,
preparation, plan, knowledge, identity or absence of mistake or accident." See id.;
see also Powell, 63 S.W.3d at 438 (stating that evidence of a person's "bad
character," as demonstrated by another crime, wrong, or act may be "admissible
when it is relevant to a noncharacter conformity fact of consequence in the case");
Cantrell v. State, 731 S.W.2d 84, 89 (Tex. Crim. App. 1987) (recognizing that
alternate purposes for admissibility of extraneous offenses listed in Albrecht not
exhaustive) (citing Albrecht v. State, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972)). 

 If the defendant in a criminal case requests notice of the State's intent to
introduce evidence of other crimes, wrongs, or acts for an alternative purposes, the
State must provide reasonable notice. Tex. R. Evid. 404(b); McDonald v. State,
179 S.W.3d at 577. But, the notice requirement does not apply if the State offers
the extraneous evidence of "other crimes, wrongs, or acts" that arise from the same
transaction. See Tex. R. Evid. 404(b). "[S]ame transaction contextual evidence is
admissible," however, "'only to the extent that it is necessary to the jury's
understanding of the offense.'" McDonald, 179 S.W.3d at 577 (quoting Wyatt v.
State, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). 

 1. Flight 

 Appellant objected at trial to lack of requested notice of the State's intent to
use evidence that appellant fled on foot when an officer wearing a jacket marked
"POLICE" stepped out of the unmarked van. The prosecutor replied that "the
evading is part and parcel of the case in chief." Through this response, the State
took the position that notice was not required under rule 404(b) because the
evidence constituted "same transaction contextual evidence." See McDonald, 179
S.W.3d at 577. When appellant's counsel countered by accusing the prosecutor of
trying "to cloud the issue" and attributing "something nefarious" to appellant, the
prosecutor also cited "guilt" and "knowledge" as alternative bases to support
admissibility, whereupon the trial court overruled appellant's objection. 

 Extraneous offense evidence of "other crimes, wrongs, or acts" may have
noncharacter-conformity relevance when it tends to make the existence of a fact
that is of consequence to the determination of the action more or less probable than
without the extraneous offense evidence. See Powell, 63 S.W.3d at 438. 
Accordingly, as the prosecutor argued at trial, evidence of an extraneous offense
may be admissible in order to show consciousness of guilt. See Ransom v. State,
920 S.W.2d 288, 299 (Tex. Crim. App. 1994) (holding that evidence of assault on
prosecutor and defense counsel in courtroom admissible as consciousness of guilt
without violating rule 404(b)). 

 Texas law has long recognized that evidence of flight or escape may be
admissible evidence from which an inference of guilt may be drawn, subject only
to the requirement of relevancy to the offense under prosecution. See Bigby v.
State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); Burks v. State, 876 S.W.2d
877, 903 (Tex. Crim. App. 1994); Cantrell, 731 S.W.2d at 92; Foster v. State, 779
S.W.2d 845, 859 (Tex. Crim. App. 1989); Rumbaugh v. State, 629 S.W.2d 747,
752 (Tex. Crim. App. 1982); Lee v. State, 176 S.W.3d 452, 462 (Tex.
App.--Houston [1st Dist.] 2004, aff'd on other grounds, No. PD-181-05, 2006 WL
1408448 (Tex. Crim. App. May 24, 2006). 

 In addition, the State is generally "'entitled to show circumstances
surrounding an arrest,'" because evidence of these circumstances, including the
defendant's resistance, may also demonstrate, as here, how police located, pursued,
and apprehended the defendant. Cantrell, 731 S.W.2d at 92 (quoting Maddox v.
State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985)). Flight is no less relevant if it
is to avoid arrest. See Burks, 876 S.W.2d at 903; Foster, 779 S.W.2d at 859. 
Finally, the Court of Criminal Appeals has held that to have evidence of flight
excluded, the burden shifts to the defendant to show affirmatively that the flight
was directly connected to some other transaction and not connected with the
offense at trial. See Lee, 176 S.W.3d at 462 (citing Wockenfuss v. State, 521
S.W.2d 630, 632 (Tex. Crim. App. 1975), in turn quoting Hodge v. State, 506
S.W.2d 870, 873 (Tex. Crim. App. 1974)).

 As appellant testified before the trial court on cross-examination, he was
aware of why the police were after him:

 Q. You saw the word police and you knew why they were coming to
get you?


 A. Yes, sir.


 Q. They were coming to get you over that car, right?


 A. Yes, sir.


 Taking into consideration appellant's concession that he was aware of the
police officer's motive to arrest him, we hold that evidence of appellant's flight on
seeing the officer wearing the jacket marked "POLICE" was relevant and
admissible to show, without violating rule 404(b), that appellant was conscious of
his guilt. See Bigby, 892 S.W.2d at 883; Burks, 876 S.W.2d at 903; Cantrell, 731
S.W.2d at 92; Foster, 779 S.W.2d at 859; Rumbaugh, 629 S.W.2d at 752; Lee v.
State, 176 S.W.3d at 462. Though appellant emphasizes the delay of nine days
between the robbery offense and his arrest in contending that evidence of his flight
constituted inadmissible extraneous offense evidence, the delay does not adversely
affect admissibility here, given that appellant knew, when he saw the officer get
out of the van, that the officer was there to arrest him. See Burks, 876 S.W.2d at
903; Foster, 779 S.W.2d at 859. 

 The evidence that appellant fled from the arresting officer was also relevant
and admissible, without violating rule 404(b), to show the circumstances of
appellant's arrest within the context of Smith's identifying him from a photo
spread and the officer's locating appellant at the location disclosed by an
anonymous tip. See Cantrell, 731 S.W.2d at 93. Finally, appellant offered no
evidence and therefore failed to meet his burden to show that his flight was
connected to some other transaction or offense. See Lee, 176 S.W.3d at 462. 

 2. Robbery Plans

 Appellant also contends that the trial court erred by overruling appellant's
rule 404(b) objection that he did not receive the required notice that the State
would present the investigating officer, who would testify that appellant disclosed
plans for a robbery in which appellant would act as the getaway driver, using
Smith's car. For rule 404(b) or its exceptions to apply, however, evidence must
pertain to conduct, i.e., "other crimes, wrongs, or acts" to which the defendant was
connected. See Tex. R. Evid. 404(b); Moreno v. State, 858 S.W.2d 453, 463 (Tex.
Crim. App. 1993). Because planned future "crimes, wrongs, or acts" are mere
inchoate thoughts and do not constitute conduct that implicates the evidentiary
safeguards of rule 404(b), appellant's rule 404(b) objection lacked merit, and the
trial court properly overruled it. See Moreno, 858 S.W.2d at 463. 

 We overrule appellant's second point of error.

Burden-of-Proof Instruction

 In his third point of error, appellant contends that omission of a burden-of-proof instruction in the jury charge on punishment caused him egregious harm. 
Though it is undisputed that he did not request the instruction, appellant argues that
the trial court should have included the instruction sua sponte. Appellant relies on
the jury's having assessed punishment at 45 years in prison to support his claim
that the trial court's alleged error resulted in egregious harm.

A. Did the Trial Court Err?

 After a defendant is found guilty, the State and the defendant may introduce
additional evidence at the punishment phase of trial in accordance with article
37.07, section 3(a)(1) of the Code of Criminal Procedure, which states as follows:

 Evidence of Prior Criminal Record in all Criminal Cases After a
Finding of Guilty


 . . . evidence may be offered by the state and the defendant as to any
matter the court deems relevant to sentencing, including but not
limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any
other evidence of an extraneous crime or bad act that is shown beyond
a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible,
regardless of whether he has previously been charged with or finally
convicted of the crime or act. 


Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2005).


 Article 37.07 also requires that the charge to the jury at the punishment
phase of trial include any "additional written instructions as may be necessary." 
Id. § 3(b). Article 37.07, section 3(a)(1) does not expressly require a jury
instruction concerning evidence of unadjudicated extraneous offenses or bad acts
admitted in the punishment phase of trial. Yet, the instruction is "logically
required" to enable the jury to properly consider evidence of unadjudicated
extraneous offenses and bad acts under article 37.07, section 3(a)(1)'s prescribed
reasonable-doubt standard. Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App.
2000). 

 Section 3(a)(1)'s requirement that the jury be satisfied of the defendant's
culpability in the extraneous offenses and bad acts is the "law applicable to the
case" in the noncapital punishment context. Id. at 484 (further noting that "the law
applicable to the case" requires sua sponte submission); see Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon Supp. 2005) (requiring that the trial court deliver to
the jury "a written charge distinctly setting forth the law applicable to the case"). The purpose of the reasonable-doubt standard at punishment, when required,
is to instruct the jury on "whether or not to consider certain evidence in assessing
sentence." See Huizar, 12 S.W.3d at 482 (contrasting statutorily required
instruction at punishment for extraneous offenses under article 37.07, section
3(a)(1) with constitutionally required use of standard at guilt-innocence to instruct
the jury in deciding "whether or not all the elements of the charged offense have
been proven beyond a reasonable doubt"). The trial court must, therefore, include
in the punishment charge an instruction that the jury may not consider evidence of
unadjudicated extraneous offenses and bad acts unless that evidence meets the
statutorily prescribed, reasonable-doubt standard. Id. 

 The responsibility to instruct the jury lies with the trial court: the defendant
is not required to request the instruction or object to its omission to preserve a
claim of article 37.07, section (3)(a)(1) error, which, therefore, may be raised for
the first time on appeal. Huizar, 12 S.W.3d at 484. Huizar thus requires that when
evidence of extraneous offenses or bad acts is introduced in the punishment phase
of a noncapital trial, the trial court has an independent duty to charge the jury
pursuant to article 37.07, section (3)(a)(1) by including an instruction that the jury
may not consider evidence of unadjudicated extraneous offenses or bad acts unless
the jury finds beyond a reasonable doubt that they occurred (an "article 37.07,
section (3)(a)(1) instruction"). See Huizar, 12 S.W.3d at 484. (7) Once the jury
decides that evidence meets the reasonable-doubt standard, it may "use [it]
however it chooses in assessing punishment." Id. at 484. 

 Because evidence of extraneous offenses and bad acts was admitted at the
punishment phase of the trial in Huizar, id. at 481, the Court of Criminal Appeals
held that the trial court erred by not including a reasonable doubt instruction in the
charge sua sponte and remanded the cause to the court of appeals for a corrected
harm analysis. Id. at 483-85 (citing Almanza v. State, 686 S.W.2d 157 (Tex. Crim.
App. 1985) (opinion on rehearing)). (8) 

 Graves v. State, 176 S.W.3d 422 (Tex. App.--Houston [1st Dist.] 2004, pet.
struck), was an appeal from a conviction of aggravated sexual assault of a minor. 
During the guilt-innocence phase of the trial, the complainant testified that the
defendant had fondled him twice before committing the assault for which he was
convicted. Id. at 427. During the punishment phase of the trial, the prosecutor
referred to the fondling incidents during cross-examination of the complainant's
grandmother and relied on the fondling acts to argue that the jury should enhance
punishment. Id. at 427, 436. We concluded that the State had relied on the two
incidents to enhance punishment and that Huizar required the trial court to include
an article 37.07, section 3(a)(1) instruction in the jury charge sua sponte. Graves,
176 S.W.3d at 434. 

 In Rayme v. State, this Court distinguished both Huizar and Graves and held
that an article 37.07, section 3(a)(1) instruction was not required at the punishment
phase, because evidence of extraneous offenses was introduced at guilt-innocence
only and not "used" or relied on in the punishment phase. See 178 S.W.3d 21, 25-26 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). (9) In Johnson v. State, this
Court also held that Huizar's holding did not apply to require an article 37.07,
section 3(a)(1) instruction because the only evidence of extraneous offenses or bad
acts admitted at the punishment phase pertained to the defendant's previously
adjudicated convictions; there was no evidence of unadjudicated extraneous
offenses or bad acts. 176 S.W.3d 94, 97-98 (Tex. App.--Houston [1st Dist.] 2004,
pet. ref'd). 

 In this case, the State introduced extraneous-offense evidence that appellant
fled to evade arrest at the guilt-innocence phase of the trial. As addressed above,
evidence of this extraneous offense was relevant, both to show that appellant was
conscious of his guilt and the circumstances of his arrest and was, therefore,
admissible, despite Tex. R. Evid. 404(b). (10) 

 In contrast to both Huizar and Graves, no additional evidence of extraneous
offenses was presented during the punishment phase of appellant's trial. See
Huizar, 12 S.W.3d at 481; Graves, 176 S.W.3d at 436. As addressed above, this
phase of appellant's trial was brief: appellant was arraigned on the enhancement
allegations and pleaded "true"; the prosecutor reoffered all evidence from the guilt-innocence phase, and was granted permission to read appellant's stipulation
concerning his ten prior convictions to the jury, after which the State rested its
punishment case. After reoffering all evidence from the guilt-innocence phase,
"from the defense standpoint," appellant also rested. 

 In further contrast to both Huizar and Graves, during final arguments to the
jury in this case, neither the prosecutor nor appellant's counsel referred to the
extraneous-offense evidence that appellant fled to evade arrest when he saw the
officer wearing the police jacket come out of the van. See Huizar v. State, 966
S.W.2d 702, 707-08 (Tex. App.--San Antonio 1998, rev'd, 12 S.W.3d 479 (Tex.
Crim. App. 2000) (noting that prosecutor not only referred to evidence of
extraneous offenses, but also remarked, in direct contravention of article 37.07,
that "the State" had no "burden of proof" at punishment stage); Graves, 176
S.W.3d at 435 (noting that State relied on evidence of two extraneous offenses of
fondling to encourage jury to enhance punishment).

 In Rayme, as here, extraneous-offense evidence, that appellant fled to avoid
arrest, was admitted only during the guilt-innocence phase. 178 S.W.3d at 26. As
here, neither counsel "used" or "referred to" the evidence at the punishment phase. 
Id. As here, though the State reoffered all of the evidence admitted during the
guilt-innocence phase during punishment, the reoffer had "no effect" on the use of
the evidence at punishment because the jury properly considers guilt-innocence
evidence during punishment "regardless of whether the State moves to re-admit it." 
Id. (citing Duffy v. State, 567 S.W.2d 197, 208 (Tex. Crim. App. 1978)). 

 The State elicited additional testimony in Rayme, in the form of victim-impact testimony and cross-examination of character witnesses, but neither
mandated an article 37.07, section (3)(a)(1) instruction. Id. at 26-27. In this case,
the only evidence the jury heard at punishment was appellant's stipulation
concerning his ten prior convictions. Yet, appellant had admitted four of these
convictions under cross-examination by the prosecutor during the guilt-innocence
phase. Regardless, as we stated in Graves, a defendant's prior convictions have
previously been adjudicated and subjected to judicial testing and have therefore
already been proven beyond a reasonable doubt. Id. at 436-37 (citing Bluitt v.
State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) and Willover v. State, 84 S.W.3d
751, 753 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd) (holding same)). In accordance with Huizar and Rayme, therefore, because no extraneous
evidence was used or referred to in the punishment phase of appellant's trial, we
hold that the trial court was not required to include an article 37.07, section 3(a)(1)
instruction in the charge to the jury on punishment and, therefore did not abuse its
discretion. We overrule appellant's third point of error. 


Conclusion

 We affirm the judgment of the trial court. 



 Sherry Radack

 Chief Justice




Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Publish. Tex. R. App. P. 47.2(b).
1. The first two offenses were the felony offenses alleged as enhancement. 
2. The Fourteenth Amendment to the United States Constitution extends the right to
counsel guaranteed by the Sixth Amendment to defendants in state-court, noncapital
criminal proceedings. Ferguson v. Georgia, 365 U.S. 570, 596, 81 S. Ct. 756, 770
(1961); Hatten v. State, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). 
3. Appellant's true plea required that the jury assess at least 25 years' punishment. See
Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 2005). 
4. Greenwood was appellant's trial counsel.
5. The Court of Criminal Appeals has noted that the Supreme Court has classified the
following as structural error: lack of impartial trial judge, unlawful exclusion of
members of the defendant's race from a grand jury, denial of right to self-representation at trial, denial of the right to a public trial, and instruction that
erroneously lowers State's burden of proof below "beyond a reasonable doubt"
standard. See Johnson v. State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (citing
Johnson v. United States, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 1549 (1997)).
6. To any extent that we conclude that the trial court abused its discretion, we assess the
harm, if any, arising from the error pursuant to rule 44.2(a). See Jasper v. State, 61
S.W.3d 413, 423 (Tex. Crim. App. 2001) (citing Tex. R. App. P. 42.2(a) as proper
standard for addressing constitutional error); Ramirez, 76 S.W.3d at 130 (citing rule
44.2(a) and Jasper, 61 S.W.3d at 423); see also Thomspon v. State, 95 S.W.3d 537,
542 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (defining constitutional error, for
rule 44.2(a) as "error that directly offends the United States or Texas Constitution,
without regard to any statute or rule that might also apply"; further stating that, "error
is constitutional only if the correct ruling was constitutionally required"). 

7. The trial court need not define the "reasonable doubt" standard. See Huizar v. State,
12 S.W.3d 479, 481 (Tex. Crim. App. 2000).
8. The State contends that the Huizar rule does not apply, in part because appellant's
flight to evade arrest did not constitute evidence of an extraneous offense. The State's
argument, however, is premised on its response to appellant's second point of error,
in which it argued that Tex. R. Evid. 404(b) did not preclude admissibility of the
evidence at the guilt-innocence phase. That rule 404(b) did not preclude admission
of the evidence does not compel that it no longer constitutes evidence of an
extraneous offense or bad act for purposes of the punishment phase of trial, when
"evidence . . . as to any matter the court deems relevant to sentencing" may be
considered. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). Article 30.07, section
3(a)(1) further specifies that it encompasses "evidence of an extraneous crime or bad
act that is shown beyond a reasonable doubt by evidence to have been committed by
the defendant"--"notwithstanding" rules 404 and 405 of the Rules of Evidence. Tex.
Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (emphasis added). Rule 404(b)
admissibility analysis, therefore, operates separately from analysis of relevancy and
admissibility for the punishment phase of trial under article 37.07, section 3(a)(1). 
See Jaubert v. State, 74 S.W.3d 1, 12 (Tex. Crim. App. 2002) (Meyers, J., dissenting)
(noting that evidence that may be admitted at punishment under article 37.07, section
(3)(a) "is virtually limitless"). 
9. We also distinguished and declined to follow Allen v. State, 47 S.W.3d 47, 50 (Tex.
App.--Fort Worth 2001, pet. ref'd), which held that an article 37.07, section 3(a)(1)
instruction is mandated in the jury charge at punishment if evidence of extraneous
offenses or bad acts is before the jury at either the guilt-innocence phase or the
punishment phase . Rayme v. State, 178 S.W.3d 21, 25-26 (Tex. App.--Houston [1st
Dist.] 2005, pet. ref'd) (distinguishing Allen).
10. Our analysis of appellant's third point of error does not encompass whether the
evidence of his planned participation in two robberies warranted an article 37.01,
section (3)(a)(1) instruction, given that we have concluded that this evidence of
planned, inchoate acts does not constitute evidence of extraneous offenses.