

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

————————————————

No. 06-11-00004-CV

————————————————

IN THE MATTER OF F.R.

_____

On Appeal from the County Court at Law #3, Sitting as a Juvenile Court
Smith County, Texas
Trial Court No. 003-0241-10

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

F.R., a juvenile, was charged with engaging in delinquent conduct by possessing a controlled substance, cocaine, in an amount less than one gram. A Smith County jury[1] found the allegations true; the trial court entered a finding that F.R. had engaged in delinquent conduct and committed him to the Texas Youth Commission (TYC). On appeal, F.R. complains of the admission into evidence of a letter found in his cell, found while he was being held in a juvenile detention facility. The letter, purportedly written by F.R., encouraged two persons to provide alibi evidence. F.R. complains first the trial court erred in admitting the letter "for all purposes"; second, F.R. claims the trial court erred in failing to give a limiting instruction regarding the letter in the court's charge to the jury. Finding no error, we overrule F.R.'s points of error and affirm the trial court's judgment.

## I.    Facts and Evidence

Tyler police officers executed a directive to apprehend[2] F.R. After transporting F.R. to a juvenile detention facility, a small plastic bag containing cocaine was found in the back seat of the police car where F.R. had been sitting. F.R. disavowed ownership of the bag and accused police of planting it. Officer Donald Rutledge, one of the arresting officers, said that during the ride to

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. FAM. CODE ANN. § 52.015 (Vernon 2008).

2

the detention facility, he had seen, in his mirror, F.R. making "furtive movements," at times leaving Rutledge's view; by the time they arrived at the detention facility, F.R., still in handcuffs, had been able to unfasten his seat belt. Rutledge also said that at the beginning of his shift, before arresting F.R., Rutledge had checked the back seat and had seen no plastic bag. He checked his vehicle like this every day he was on duty. Rutledge did not testify whether he had transported any other person before F.R. on the date of the incident, but he did say that in addition to checking the back seat of the car at the beginning of his shift, he looked in the car and saw no contraband or plastic bags before putting F.R. into the back seat.

At trial, the State offered the letter found in F.R.'s cell. The letter constituted contraband, an item F.R. was not permitted to possess in his cell. The letter was addressed to two people. While earlier testimony had been that only F.R., his mother, and possibly a sibling had been present when police arrived at the family home and took F.R. into custody, the letter's author encouraged the recipients to testify they had been present when the arrest was made, and to further testify that they had seen the officer conduct the search and that he had found no contraband. The letter contained an offer to pay each recipient $70.00.[3] The State offered no proof F.R. actually wrote the letter. Rather, circumstantial evidence—the letter was found in F.R.'s cell and

---

[3]The letter states in part: "I am gone [sic] to pay both of yall to be my witn's [sic] in crourt [sic] Novmber [sic], 2, I need yall to say that yall was at my house wen [sic] the police came in took me to jail." The letter lists the date of arrest as September 23, the date Rutledge said he arrested F.R. The letter indicated that if the recipients, addressed as Raymond and Kendrick, would provide that testimony, "I want [sic] go to [TYC]."

discussed the circumstances of his case—including a trial date one day before his adjudication hearing actually commenced—supplied an inference that he was its author.

## II.    Admission of Letter

F.R.'s first point of error complains the trial court erred in admitting the letter found in F.R.'s room at the detention facility.  He complains it was admitted to show he acted "in conformity," by which we assume he means that evidence of other crimes, wrongs, or acts are not admissible to "prove the character" of the actor  "in order to show [he acted] in conformity therewith."  TEX. R. EVID. 404(b).[4]  A person is to be tried for the charged offense, and "not for being a criminal generally."  *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993).[5]

The possible bases for admission of extraneous acts listed in Rule 404(b) (including intent or knowledge) are not exclusive or exhaustive.  *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (op. on reh'g).   We employ an abuse of discretion standard when reviewing a trial court's decision to admit evidence.  *Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex. Crim. App. 1997).   So long as the trial court's ruling was within the "zone of reasonable disagreement,"

---

[4]"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction."

[5]Rule 404(b) prohibits the introduction of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity with his or her character.  F.R. attempts to use Rule 404 to argue that the State improperly sought to introduce the letter to prove that defendant acted in conformity with the contents of the letter.  We do not believe that is a proper application of Rule 404.

4

we will not find an abuse of discretion and the trial court's ruling will be upheld. *Id*. at 169. The State told the trial court it was offering the letter "to prove knowledge and intent." To prove F.R. was guilty of possession of a controlled substance, the State had to prove, beyond a reasonable doubt, F.R. "knowingly or intentionally" possessed cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2010). The drugs were not found on F.R.'s person, but on the floor of a police car in which he had recently been transported. The letter, found in the room F.R. exclusively occupied, suggested F.R. wanted two friends to testify that they had been present at his arrest and witnessed police find no drugs when they searched him. No testimony was offered establishing F.R. was the author of the letter, but considering that it was found in his cell and discussed the events and date involved in his case, the jury could reasonably infer it was written by F.R. Combined with testimony that no one but F.R.'s mother and possibly a sibling were in the home on the date of the arrest, and the writer's offer to pay each recipient $70.00 for their testimony, suggests (a) the letter was written by F.R.; and (b) he composed it with an eye toward establishing an alibi or exculpatory evidence regarding his pending charge. All of this made a fact of consequence, that F.R. knowingly or intentionally possessed the drugs found in the police car where he had just been sitting, more probable.[6] *See* TEX. R. EVID. 401; *Montgomery*, 810 S.W.2d at 387. The letter thus was relevant evidence.

---

[6]Also, the letter, if deemed to have been written by F.R., was relevant as evidence of consciousness of guilt. *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994) (op. on reh'g) (holding evidence of assault on prosecutor and defense counsel in courtroom admissible as consciousness of guilt without violating Rule 404(b));

Relevant extraneous offense evidence may still be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. When the trial court is called on to balance the probative value against the potential prejudice of evidence of "other crimes, wrongs, or acts," a presumption exists favoring the former. *McFarland v. State*, 845 S.W.2d 824, 837 (Tex. Crim. App. 1992), *overruled in part on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994); *Barron v. State*, 864 S.W.2d 189, 193 (Tex. App.—Texarkana 1993, no pet.). In other words, this rule carries with it a presumption that relevant evidence will be more probative than prejudicial. *Barron*, 864 S.W.2d at 193 (citing *Green v. State*, 840 S.W.2d 394 (Tex. Crim. App. 1992)). In evaluating the trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position vis-a-vis an appellate court to gauge the impact of the relevant evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 389).

The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include:

> (1)   how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable--a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

---

*Burks v. State*, 227 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (evidence appellant fled from arresting officer relevant).

(2)     the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"

(3)     the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4)     the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Santellan*, 939 S.W.2d at 169 (quoting *Montgomery*, 810 S.W.2d at 389–90) (footnote omitted).

A.      **The Letter Made a Fact of Consequence More Probable**

Other than the letter at issue, the evidence supporting a finding that F.R. knowingly or intentionally possessed cocaine was simple:   the police officer testified there was no contraband in the back seat of his squad car before his shift or when he placed F.R. in the back seat; after delivering F.R. to the juvenile facility, a plastic bag containing cocaine was found on the floor beneath where F.R. had been sitting.   The officer also testified that in his rear-view mirror, he could see F.R. fidgeting in the back seat, occasionally moving out of the mirror's view.   It would not be an unreasonable inference for the jury to conclude F.R. wrote the letter; it was found in his room, and addressed events on September 23, the date F.R. was arrested.   The letter invites its recipients to appear at trial on November 2; although jury selection and trial were held on November 3, these facts provide circumstantial evidence that F.R. authored the letter.   And if F.R. did write the letter, it suggests he did so to create exculpatory evidence, making the fact of consequence—knowing or intentional possession of the cocaine—more probable.

7

**B.**     **Potential for Irrational Impression**

F.R. argues the letter could only act to inflame the jury and encourage it to find him guilty of possession of drugs because he had written the letter, which conceivably suborned perjury. However, all prejudicial evidence has the tendency to cause a fact-finder to take a negative view of the actor. In this case, we cannot say the letter was likely to negatively impress the jury in an irrational way; nothing in the record indicates the jury could not rationally evaluate the weight to be given this evidence.

**C.**     **Time Spent to Develop and Prove Extraneous Event**

The adjudication hearing of F.R. was completed in one day; the State called four witnesses. About seven pages of the reporter's record was spent explaining, arguing about, offering, and reading this letter to the jury. This was during the testimony of juvenile probation officer David Spencer, whose testimony took up about eleven pages of the record. Further, the evidence did not distract the jury from considering the instant indictment; if believed, this evidence shed light on whether F.R. intentionally possessed the controlled substance. Considering the nature of this evidence and the overall length of this adjudication hearing, an inordinate amount of time was not devoted to this extraneous offense.

**D.**     **Other Evidence Available to the State**

As mentioned above, the only evidence presented by the State, other than the letter, pointing to F.R.'s guilt was the fact that a small package of cocaine appeared on the floorboard of

the squad car beneath F.R.'s place of seating, combined with testimony from Rutledge that he routinely, and specifically on the day in question did, check the area in the back seat of the car. The letter evidence was related to an issue in dispute—whether F.R. intentionally possessed the controlled substance. The letter, to the extent it could be found to prove knowledge or intent or consciousness of guilt was probative as to facts of consequence.

Considering these analytical questions, and recalling the presumption in favor of admission of relevant evidence, we cannot say the trial court erred in admitting the letter in to evidence. Its potentially prejudicial impact did not substantially outweigh the probative value. We overrule F.R.'s first point of error.

## III.    Limiting Instruction in Jury Charge

In discussing the drafted jury charge, F.R. asked the trial court to include a limiting instruction:

> [Defense Counsel]:   We'd ask that the final charge include the 404(b) instruction previously submitted,[7] the limiting instruction previously submitted to the Court.
> I think it's relevant in regards to all of the extraneous offenses, including the fact that he was on probation, the fact he was a runaway, the letter that was admitted into evidence where he allegedly offered to pay witnesses.

---

[7]Early in the adjudication proceeding, during the State's questioning of the officer who took F.R. into custody, F.R. asked the trial court to give the jury a limiting instruction concerning the directive to apprehend F.R. The trial court then instructed the jury that evidence of any other act was not to be considered in determining whether F.R. committed the charged conduct. The testimony was to be considered only as regards why police officers took the actions they did, i.e., taking F.R. into custody. At that point in testimony, before Rutledge discussed executing the directive to apprehend, F.R. asked for a limiting instruction then and in the jury charge. Although his charge request quoted above could be construed as a request for a limiting instruction in the charge regarding the directive to apprehend, F.R.'s point of error only complains about no limiting instruction regarding the letter.

The trial court denied the request for a limiting instruction. F.R.'s second point of error complains the trial court erred in failing to include a limiting instruction regarding the letter in the jury charge. We overrule the point of error.

When the State offered evidence of the letter found in F.R.'s cell, F.R. made several objections, all of which were overruled by the trial court, who then admitted the letter in to evidence. F.R. did not request a limiting instruction at the time the evidence was admitted. A request for a limiting instruction must be made at the admission of the evidence. Without a request for a limiting instruction at the time the evidence is presented, it is admitted for all purposes. "If the jury is required to consider evidence in a limited manner, then it must do so from the moment the evidence is admitted." *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). Since the evidence concerning the letter was admitted for all purposes, a limiting instruction on the evidence in the charge was not warranted. *Id.* The trial court did not err in refusing to give a limiting instruction in the jury charge.[8]

Finding no error, we overrule F.R.'s points of error and affirm the trial court's judgment.

Jack Carter
Justice

---

[8]"Because the evidence in question was admitted for all purposes, a limiting instruction on the evidence was not 'within the law applicable to the case,' and the trial court was not required to include a limiting instruction in the charge to the jury." *Hammock*, 46 S.W.3d at 895 (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14).

Date Submitted:     May 26, 2011
Date Decided:       May 27, 2011

11