

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00370-CR

Robert Michael **RIDINGS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 486449
The Honorable Crystal D. Chandler, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Irene Rios, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

Robert Michael Ridings was convicted by a jury of deadly conduct.  On appeal, Ridings contends the evidence is insufficient to support his conviction.  Ridings also contends the trial court abused its discretion in admitting evidence that he was cursing, kicking, and lunging at the responding police officers because: (1) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice; (2) the evidence was not relevant; and (3) the evidence was not admissible under rule 404(b) of the Texas Rules of Evidence.  We affirm the trial court's judgment.

## BACKGROUND

James Prendergast testified his stepsister, Jennifer Zerzeck, called him on March 22, 2005, and told him Ridings was throwing her things into the yard. Zerzeck had been dating Ridings for approximately one month. As Prendergast and his girlfriend, Julia Traywick, were driving towards Ridings's home, Zerzeck called again and said Ridings had pointed a gun at her and told her he would shoot Prendergast and anyone else who came to his house. After Prendergast called 911, Zerzeck called again and said she had gotten out of the house and was hiding. Each time Zerzeck called, she spoke with both Prendergast and Traywick, and Prendergast and Traywick both testified about the statements Zerzeck made.

When Prendergast and Traywick arrived, Prendergast parked down the street from Ridings's house and told Traywick to stay in the bushes. Prendergast was speaking with Zerzeck on the phone when he saw a car pull up to Ridings's house. Zerzeck told Prendergast the car belonged to Ridings's roommate Travis Orr. Prendergast testified Orr was halfway up the yard towards the house when Ridings exited the house and pointed a gun with a tactical light and laser at Travis's chest while yelling police commands at him. Prendergast ran behind a tree in the vicinity. Prendergast believed Ridings heard him because Ridings went back inside the house. Prendergast called for Orr to come to him, and the two returned to Prendergast's car where they waited for the police to arrive. Traywick testified Orr told her Ridings had pointed a gun at his chest.

The police were dispatched to Ridings's home in response to a disturbance call and were informed that Ridings wanted to have a standoff with the police. Upon arriving at Ridings's house, the police officers observed Ridings exiting his house. In response to the officers' initial commands, Ridings informed them he was locking his door. Ridings then responded to the officers' commands to put his hands in the air and lie down in the yard. Ridings told the officers

he was in possession of a weapon, and the officers recovered a revolver from Ridings which was admitted into evidence.

One of the officers spoke with Zerzeck and Orr. Orr informed the officer that Ridings pointed a gun with a beam at his head and chest. The revolver recovered from Ridings did not have a laser; however, Orr told the officer Ridings had more weapons inside the house, including a weapon under the cushion of the couch and weapons in a gun safe in the bedroom.

Ridings was angry and uncooperative after he was placed in handcuffs. He was yelling, cussing, and kicking his legs towards one of the officers. When the officers allowed Ridings to stand up after he agreed to calm down, Ridings lunged at one of the officers, so another officer forced him back to the ground.

After Ridings was arrested and taken from the scene, Prendergast accompanied Orr inside the residence to retrieve Zerzeck's belongings. Prendergast testified Orr showed him a bedroom which contained additional firearms, including a pistol which Prendergast thought had a tactical light. During trial, Prendergast was shown the revolver recovered from Ridings. Prendergast testified the revolver did not contain any markings that would be present if the revolver had a tactical light installed on it.

Zerzeck was the only witness called by the defense. She testified she was taking pain medication and drinking on the night in question, and she was intoxicated. Although Zerzeck admitted she told Prendergast that Ridings pointed a gun at her, she testified Ridings never actually pointed a gun at her. Zerzeck identified defense exhibit one as the gun Ridings was holding. One of the officers identified the gun as a training weapon which could not project bullets and testified the gun had a light and laser. Zerzeck stated she knew Ridings had more guns but was not familiar with all of his guns or how many he had.

After hearing the foregoing testimony, the jury acquitted Ridings of deadly conduct with regard to Zerzeck but found him guilty of deadly conduct with regard to Orr. Ridings appeals.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, Ridings contends the evidence is legally insufficient to support his conviction. Based on Zerzeck's testimony identifying the training weapon as the gun Ridings pointed at her and Prendergast's testimony that the gun pointed at Orr had a tactical light and laser, Ridings argues the gun he pointed at Orr was also necessarily the training weapon because it had a tactical light and laser while the revolver recovered by the officers did not. Because the training weapon was not a firearm, Ridings contends the evidence is legally insufficient to show he committed the offense of deadly conduct.

When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on the evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of its verdict and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). We determine whether the necessary inferences made by the jury are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16–17.

A person commits the offense of deadly conduct "if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a) (West 2011). "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *Id*. at § 22.05(c). The jury charge defined "firearm" as a device designed or made to expel a projectile through a barrel. *See id*. at § 46.01(3) (West Supp. 2016). As previously noted, Ridings contends the evidence is legally insufficient to prove that he pointed a "firearm" in Orr's direction.

Although only two guns were admitted into evidence and only one of those guns, the training gun, had a tactical light and laser, the jury could disbelieve Zerzeck's testimony that the training gun was the weapon Ridings was holding. Given the conflicts between Zerzeck's trial testimony and the statements she made to Prendergast and Traywick, the jury could have found Zerzeck was not a credible witness. Alternatively, based on the testimony about the numerous other firearms in Ridings's possession, the jury could logically infer the gun pointed at Orr was a firearm. Therefore, we hold the evidence is legally sufficient to support Ridings's conviction. Ridings's first issue is overruled.

## ADMISSIBILITY OF EVIDENCE

In his other three issues, Ridings contends the trial court abused its discretion in admitting the officers' testimony that he was cussing, kicking, and lunging at the responding officers. Ridings contends the evidence was not relevant, was inadmissible under Rule 404(b), and its probative value was outweighed by the danger of unfair prejudice. The State responds the evidence was admissible to show Ridings's state of mind and the context surrounding his arrest.

On appeal, we review a trial judge's evidentiary rulings under an abuse of discretion standard. *Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016). Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable

than it would be without the evidence. TEX. R. EVID. 401. Although Rule 404(b) prohibits the admission of evidence of other wrongs or acts to prove a person's character in order to show that he acted in conformity therewith, such evidence is admissible for other purposes such as to show consciousness of guilt and the circumstances surrounding an arrest. TEX. R. EVID. 404(b); *see also Burks v. State*, 227 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Finally, under Rule 403, we consider the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Rule 403 favors the admissibility of relevant evidence, and relevant evidence is presumed to be more probative than prejudicial. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003).

In this case, the proffered evidence was relevant and admissible under Rule 404(b) to show Ridings's state of mind and the circumstances surrounding his arrest. *See Fletcher v. State*, 852 S.W.2d 271, 277-78 (Tex. App.—Dallas 1993, pet. ref'd) (holding evidence that defendant assumed a fighting stance when officers arrived was probative of his state of mind); *Humber v. State*, 624 S.W.2d 814, 816 (Tex. App.—Houston [14th Dist.] 1981, no pet.) (holding state is entitled to prove the circumstances surrounding an arrest). Because crimes do not occur in a vacuum, the State is entitled to prove the circumstances surrounding an arrest even though they may seem like irrelevant details. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972); *Wilkerson v. State*, 874 S.W.2d 127, 131 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). A defendant's aggressive behavior during an arrest or resistance to an arrest is also admissible as an indication of consciousness of guilt. *See Butler v. State*, 936 S.W.2d 453, 457-59 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding trial court did not abuse its discretion in admitting evidence that appellant kicked out the door of the police car following his arrest because evidence

was relevant to his state of mind and indicated a guilty knowledge of the offense). Ridings's aggressiveness during his arrest was consistent with the aggressive behavior in which he engaged by pointing a gun at Orr and shouting commands at him, especially since Orr had simply arrived at the house he shared with Ridings. *See Cruz v. State*, 04-96-00267-CR, 1997 WL 94165, at \*2-3 (Tex. App.—San Antonio Feb. 28, 1997, no pet.) (holding appellant's belligerence, resistance, and violent outburst upon being placed under arrest was consistent with his actions during the robbery with which he was charged) (not designated for publication). Finally, having determined the evidence is relevant and admissible for other purposes under Rule 404(b), we also hold the trial court did not abuse its discretion in overruling Ridings's Rule 403 objection because the testimony spanned only a few pages of the record and did not have the potential to impress the jury in some irrational, yet indelible, way. Accordingly, Ridings's second, third, and fourth issues are overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH