

## IN THE
## TENTH COURT OF APPEALS

### No. 10-13-00430-CR

**QUINCY DESHAN BUTLER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 12-00472-CRF-272**

## MEMORANDUM  OPINION

In five issues, appellant, Quincy Deshan Butler, challenges his conviction for deadly conduct by discharging a firearm. *See* TEX. PENAL CODE ANN. § 22.05(b) (West 2011). We affirm.

## I.  BACKGROUND[1]

This is the not the first time this criminal transaction has been before this Court. *See, e.g., Ex parte Butler*, No. 10-13-00362-CR, 2014 Tex. App. LEXIS 5833 (Tex. App.—Waco May 29, 2014, pet. ref'd) (mem. op., not designated for publication); *State v. Butler*, No. 10-12-00234-CR, 2013 Tex. App. LEXIS 5541 (Tex. App.—Waco May 2, 2013, pet. ref'd) (mem. op., not designated for publication).  In the instant case, appellant was charged by indictment with deadly conduct by discharging a firearm and unlawful possession of a firearm by a felon.[2]  Included in the indictment were two enhancement paragraphs referencing appellant's prior felony convictions for unlawful possession of a controlled substance.  At the conclusion of the evidence, the jury found appellant guilty of engaging in deadly conduct by discharging a firearm.  Additionally, the jury concluded that the enhancement paragraphs were true and subsequently sentenced appellant to sixty-two years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  This appeal followed.

## II.  APPELLANT'S MOTION TO QUASH THE INDICTMENT

In his first issue, appellant contends that the trial court erred in denying his motion to quash the indictment in this case.

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case.  *See* TEX. R. APP. P. 47.1, 47.4.

[2] As explained later, there has not been a trial on the charge for unlawful possession of a firearm by a felon.  As such, appellant's conviction for deadly conduct by discharging a firearm is the subject of this appeal.

## A.    Applicable Law

The sufficiency of an indictment is a question of law.  *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).  Therefore, we review de novo a trial court's ruling on a motion to quash an indictment.  *Id.*  An indictment is sufficient when it charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged.  TEX. CODE CRIM. PROC. ANN. art. 21.11 (West 2009).

## B.    Discussion

Here, the indictment provides the following, in relevant part:

QUINCY BUTLER hereinafter referred to as the Defendant, heretofore on or about May 28, 2011, did then and there knowingly discharge a firearm at or in the direction of individuals, namely, Pinkie Hardy and David Robertson [sic],

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use or exhibit a deadly weapon, to-wit:  a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury,

PARAGRAPH TWO:  and it is further presented in and to said Court, that the said QUINCY BUTLER, in the County of Brazos and State of Texas on or about the 28th day of May, 2011, did,

Then and there knowingly discharge a firearm at or in the direction of a habitation, and the defendant was then and there reckless as to whether the habitation was occupied, to-wit:  by discharging said firearm at a habitation knowing that Pinkie Hardy and David Robertson [sic] were inside of said habitation,

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use

or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury.

COUNT TWO: and it is further presented in and to said Court, that the said QUINCY BUTLER, in the County of Brazos and State of Texas on or about the 28th day of May, 2011, did,

then and there, having been convicted of the felony offense of Possession of Controlled Substance on the 7th day of February, 2008, in Cause No. 44367 in the 240th District Court of Fort Bend County, Texas, intentionally or knowingly possess a firearm before the fifth anniversary of the defendant's release from confinement following conviction of said felony,

And it is further presented in and to said Court that, during the commission of the aforesaid offense, the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, which in the manner of its use or intended use was capable of causing death or serious bodily injury, namely, by discharging said firearm at Pinkie Hardy and David Robertson [sic] or at a habitation in which the defendant knew Pinkie Hardy and David Robertson [sic] were located . . . .

In his motion to quash, appellant argued that: (1) Count 2 of the indictment improperly charges appellant with two different crimes—unlawful possession of firearm by a felon and deadly conduct; (2) the deadly-conduct allegation fails to state a culpable mental state; (3) the indictment improperly expanded the definition of deadly weapon to include extraneous acts and offenses; and (4) the indictment improperly charges appellant with the same offense—deadly conduct—in both Counts 1 and 2 of the indictment, thereby violating his rights to due process and double jeopardy.

1.    **Count 2 of the Indictment**

With respect to Count 2 of the indictment, the record is clear that appellant has not been tried on that count. As such, appellant's complaints about Count 2 of the indictment amount to an interlocutory appeal of the trial court's denial of his motion to

quash. *See, e.g., Chambliss v. State*, No. 10-13-00002-CR, 2013 Tex. App. LEXIS 2060, at **1-2 (Tex. App.—Waco Feb. 28, 2013, no pet.) (mem. op., not designated for publication). We do not have jurisdiction of an interlocutory appeal of the denial of a motion to quash an indictment. *See Abbott v. State*, 271 S.W.3d 694, 696-97 (Tex. Crim. App. 2008) (noting that the standard for determining jurisdiction is not whether the appeal is precluded by law, but whether an appeal is authorized by law); *Everett v. State*, 91 S.W.3d 386, 386 (Tex. App.—Waco 2002, no pet.) (stating that the court has jurisdiction over criminal appeals only when expressly granted by law); *Wright v. State*, 969 S.W.2d 588, 589 (Tex. App.—Dallas 1998, no pet.) (stating that appellate court may consider appeals by criminal defendants only after conviction); *see also Charboneau v. State*, No. 05-13-00203-CR, 2013 Tex. App. LEXIS 1793, at *2 (Tex. App.—Dallas Feb. 20, 2013, no pet.) (mem. op., not designated for publication) ("Orders denying pretrial motions to suppress, quash a complaint, and dismiss are not appealable interlocutory orders."). Therefore, we lack jurisdiction to address appellant's first and fourth contentions—both of which center on Count 2 of the indictment. *See Abbott*, 271 S.W.3d at 696-97; *Everett*, 91 S.W.3d at 386; *Wright*, 969 S.W.2d at 589; *see also Chambliss*, 2013 Tex. App. LEXIS 2060, at **1-2; *Charboneau*, 2013 Tex. App. LEXIS 1793, at *2.

### 2. Culpable Mental States

In his motion to quash, appellant also argues that the deadly-conduct allegation contained in the indictment failed to state all of the elements of the offense of deadly conduct by failing to state a culpable mental state. However, on appeal, appellant asserts that the indictment alleged the wrong culpable mental state. Specifically,

appellant contends that the "knowing" culpable mental state refers to the discharging of a firearm, and the "reckless" culpable mental state pertains to appellant's knowledge that the trailer house was occupied.

Based on our review of the record, appellant's complaint on appeal pertaining to the culpable mental states listed in the indictment do not comport with appellant's complaints made in his motion to quash. A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *See* TEX. R. APP. P. 33.1; *see also Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Accordingly, because appellant's contention does not comport with the argument made at trial, this contention presents nothing for review. *See* TEX. R. APP. P. 33.1; s*ee also Lovill*, 319 S.W.3d at 691-92.

### 3.    The Deadly-Weapon Allegation

In his final contention in this issue, appellant asserts that the trial court should have granted his motion to quash because the State improperly added additional elements to the deadly-weapon allegation in the indictment. More specifically, appellant alleges that since a firearm is a per se deadly weapon, the State was not required to prove anything related to the manner of its use. However, as the Court of Criminal Appeals has recently stated, mere possession of a firearm during the commission of a felony is not sufficient to sustain a deadly-weapon finding. *Plummer v. State*, 410 S.W.3d 855, 858-60 (Tex. Crim. App. 2013). Rather, the State must prove that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction

was obtained; and (3) that other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc) (internal citations omitted). The language contained in the indictment merely identified the elements necessary for the State to prove the affirmative finding of a deadly weapon. *See id.* As such, we cannot say that the trial court erred in denying appellant's motion to quash on this ground. *See Moff*, 154 S.W.3d at 601. And based on the foregoing, we overrule appellant's first issue.

### III. APPELLANT'S MOTION FOR MISTRIAL

In his third issue, appellant complains that the trial court abused its discretion by denying his motion for mistrial on three different occasions during trial.

### A. Applicable Law

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648; *see Ladd*, 3 S.W.3d at 567.

**B.      Appellant's First Motion for Mistrial**

First, appellant asserts that the trial court should have granted his motion for mistrial because of Ebony Hardy's reference to her mother being shot by a boyfriend. The following exchange serves as the basis for appellant's contention:

| | |
|---|---|
| [The State]: | When you saw her [Pinkie] out in the grass, what did you think? |
| [Hardy]: | I just thought about my mother. |
| Q: | And what happened to her? |
| A: | Her boyfriend also shot her in the head. |
| [Defense counsel]: | Objection, [Y]our Honor.  We're going to object to anything about what happened to— |
| THE COURT: | I sustain the objection. |
| [Defense counsel]: | We ask the jury be instructed to disregard. |
| THE COURT: | Ladies and gentleman, disregard that last statement[,] which had nothing to do with this case.  Strike it from your mind[,] and do not consider it for any purpose. |
| [Defense counsel]: | We would ask for a mistrial. |
| THE COURT: | That'll be denied. |

On appeal, appellant contends that this testimony was inflammatory, prejudicial, and necessitated the granting of his motion for mistrial.  We disagree.  The prosecutor's question here was general and did not expressly implicate appellant in the shooting of Pinkie, especially given that the evidence established that Pinkie was dating multiple people at the time of the incident.  Based on our review of the evidence, we cannot say that the above exchange was so inflammatory as to be incurable by an instruction to

disregard. *See Ladd*, 3 S.W.3d at 567 ("The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."); *see also Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) ("In the vast majority of cases in which . . . testimony comes in . . . which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence[,] this Court puts its faith in the jury's ability, upon instruction, consciously to recognize the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations."). Accordingly, we cannot say that the trial court abused its discretion by denying appellant's first motion for mistrial. *See Ladd*, 3 S.W.3d at 567; *Gardner*, 730 S.W.2d at 696; *see also Archie*, 221 S.W.3d at 699-700.

## C.     Appellant's Second Motion for Mistrial

Next, appellant argues that the trial court abused its discretion by denying his second motion for mistrial that pertained to testimony provided by David Roberson, one of Pinkie's boyfriends. At trial, Roberson, an individual with numerous stints in prison, indicated that he feared for his family's safety because of his trial testimony. Apparently, Roberson's fear stemmed from evidence presented at a hearing on appellant's motion to suppress. At that hearing, the evidence demonstrated that

Roberson had been indicted for first-degree felony possession of a controlled substance with intent to deliver; however, that charge was dismissed based on Roberson's prior work as a confidential informant for the Bryan Police Department. This evidence was suppressed, and a transcript of the hearing was produced. A copy of this transcript revealing Roberson's status as a confidential informant was given to appellant in the jail by appellant's appellate counsel. The State alleged that appellant made a copy of the transcript and distributed it throughout the jail before it was discovered by law enforcement. At a hearing held outside the presence of the jury, the State asserted that Roberson and his family were threatened as a result of appellant's distribution of the hearing transcript.

Thereafter, the trial court determined that the transcript of Roberson's testimony at the hearing on appellant's motion to suppress and the discussion of Roberson's status as a confidential informant should be sealed from appellant. As such, defense counsel and counsel for the State were ordered not to provide appellant with copies of this information. Appellant's counsel argued that he should be able to cross-examine Roberson about the sealing of the transcript, arguing that the sealing provided him an incentive to testify in favor of the State. In response, the trial court ruled that the sealing of the transcript was admissible to impeach Roberson; however, the trial court noted that the State could ask Roberson about the reason behind the sealing of the transcript.

On direct-examination, the State asked Roberson about his concerns about there being in existence a written transcript, to which Roberson responded, "Right." Defense

counsel objected, which the trial court overruled. Next, the State asked the following questions:

[The State]: And did we—after you brought that up to us, did we tell you we had asked the judge to enter an order to seal that particular part of the transcript so that it would exist for the defendant's lawyers for appellate purposes but it wouldn't be available to other people?

[Roberson]: Yes.

Q: And was that—is that because you feared for your safety?

A: Not so much as my family's. I mean, I'm good.

Defense counsel objected to this last question and requested that the trial court issue an instruction to the jury to disregard. Defense counsel also moved for a mistrial. In response, the trial court sustained defense counsel's objection and issued an instruction to the jury to disregard the question and answer pertaining to safety. However, the trial court denied defense counsel's motion for mistrial.

Testimony that refers to or implies extraneous offenses can be rendered harmless by an instruction to disregard by the trial court, unless the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see Harris v. State*, 164 S.W.3d 775, 783 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Furthermore, we presume that a jury follows a court's instruction to disregard testimony, absent some proof from the record that the jury did not or could not follow such an instruction. *See Thrift v. State*, 176

S.W.3d 221, 224 (Tex. Crim. App. 2005). Nothing in Roberson's testimony expressly implicated appellant or explained why Roberson feared for his safety and the safety of his family. Therefore, based on our review of the record, we cannot say that the question and answer pertaining to safety was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis v. State*, No. 03-99-00824-CR, 2001 Tex. App. LEXIS 3171, at **10-12 (Tex. App.—Austin May 17, 2011, no pet.) (op. on reh'g) (not designated for publication) (concluding that a detective's statement that witnesses were reluctant to testify for fear of retaliation was curable by an instruction to disregard, and thus, the trial court did not abuse its discretion in refusing to grant a mistrial). Accordingly, we cannot say that the trial court abused its discretion in denying appellant's second motion for mistrial. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also Archie*, 221 S.W.3d at 699-700.

## D. Appellant's Third Motion for Mistrial

And finally, appellant contends that the prosecutor's argument during closing argument warranted a mistrial. Specifically, appellant complains about the following statements made by the prosecutor:

> If Pinkie Hardy had died, as the doctor said by all account she should have, and we're standing here arguing to you today on a murder case. With the kind of criminal history that he [appellant] has, you have a drug dealer from Houston who comes into this community to sell poison and then commits a murder while he's here.

Defense counsel objected and requested a jury instruction to disregard and a mistrial. The trial court sustained counsel's objection and instructed the jury to disregard the "murder statement of counsel."

Assuming, without deciding, that the complained-of statement was improper, based on our review of the record, we conclude that the trial court's instruction to disregard cured any error. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis*, 2001 Tex. App. LEXIS 3171, at **10-12. Appellant does not adequately explain, and we do not believe, that the prosecutor's statement was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also McGinnis*, 2001 Tex. App. LEXIS 3171, at **10-12. We therefore conclude that the trial court did not abuse its discretion in denying appellant's third motion for mistrial. *See Kemp*, 846 S.W.2d at 308; *Harris*, 164 S.W.3d at 783; *see also Archie*, 221 S.W.3d at 699-700. We overrule appellant's third issue.

## IV.    CROSS-EXAMINATION AND IMPEACHMENT OF ROBERSON

In his fourth issue, appellant complains that the trial court erred in refusing to allow him to cross-examine Roberson on the details of his work as a confidential informant.

### A.    Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*,

Butler v. State                                                                                                    Page 13

380 U.S. 400, 403, 85 S. Ct. 1065, 1067-68, 13 L. Ed. 2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 347 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17; 94 S. Ct. at 1110. The accused is entitled to great latitude to show a witness' bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 674 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see also Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993). Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 15 (1985)

(emphasis in original); *see Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App.—Fort Worth 2009, pet. ref'd).

**B.     Discussion**

On direct examination, Roberson testified before the jury that he was a confidential informant for the State and that he had a first-degree felony offense dismissed because of his work.  The trial court also allowed Roberson to testify about the transcript from the motion to suppress, which was sealed from disclosure for the witness's safety.  *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) ("Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, *the witness' safety*, or interrogation that is repetitive or only marginally relevant" (internal citations & quotations omitted) (emphasis added)).  Later, on cross examination, defense counsel also questioned Roberson about his role as a confidential informant.  In particular, defense counsel asked the following questions:

| | |
|---|---|
| [Defense counsel]: | And then you've had some—is it true you've had cases dismissed because you cooperated with law enforcement to testify against other individuals in those particular cases? |
| [Roberson]: | Yes. |
| Q: | And even in some other cases, that may not have anything to do with those; is that correct? |
| A: | Yeah. |

Besides the speculative nature of defense counsel's questioning about Roberson's service as a confidential informant, appellant has failed to show that eliciting the details

of Roberson's work as a confidential informant would show a greater bias than the evidence proffered. In other words, appellant has presented no evidence of a causal connection between the information appellant provided the State in his work as a confidential informant and his testimony in the instant case.

The Court of Criminal Appeals has stated:

> In *Irby*, the defendant wanted to cross-examine [the testifying complainant] about the fact that he was on deferred-adjudication probation for aggravated assault with a deadly weapon. As in *Carpenter*, the defendant argued to the trial judge that the witness's vulnerable status was relevant to show bias and motive. Once again, however, we held that the appellant failed to make a logical connection between [the complainant's] testimony . . . and his entirely separate probationary status. Reasoning that a mere showing of a witness's vulnerable status with the State, if evidenced only by his probationary status, would not make it any more or less probable that the witness harbored some bias in favor of the State, we concluded that the trial judge did not abuse his discretion in excluding this impeachment evidence because it was irrelevant.
>
> . . . .
>
> The fact that a witness stands accused of (for example) felony theft would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified felony. Both hypothetical witnesses—the one accused of felony theft and the other accused of the unspecified felony—would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment. In other words, had the jury been presented with the fact that Joseph's felony charges were actually felony theft charges (and that Stefan's were actually felony robbery charges), it would have had no incrementally greater capacity to evaluate his potential for bias— its perception of the witness's vulnerable relationship with the state would be essentially the same as before. Thus, as in *Carpenter*, Appellant's bill of exception, insofar as it pertains to the nature of the witnesses' charged offenses, does no more than establish the factual basis of the pending [State] charges.
>
> . . . .

But a trial court's discretion does not simply terminate upon a showing that the proffered impeachment evidence and the allegation of bias are logically connected. Indeed, it is a basic tenet of the law of evidence that merely establishing the relevancy of proffered evidence does not necessarily guarantee its admissibility.

*Johnson v. State*, 433 S.W.3d 546, 553-54 (Tex. Crim. App. 2014) (internal citations & quotations omitted).

With regard to the wide latitude afforded trial judges in limiting cross-examination, the *Johnson* Court further explained:

This latitude is exceeded only when the trial court exercises its discretion to so drastically curtail the defendant's cross-examination as to leave him unable to make the record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. This kind of trial-court error is most conspicuous, of course, when the trial court entirely forecloses the defense from exposing—prohibits all inquiry into—a prototypical form of bias. But it may also be subtler, such as when the only record-making permitted the defense is so circumscribed that a reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination.

*Id.* at 555 (internal citations & quotations omitted).

Here, appellant was allowed to elicit testimony that Roberson had previously worked as a confidential informant. Appellant was not entirely foreclosed from exploring Roberson's potential bias, nor was appellant's defense "so circumscribed that a reasonable jury might have received a significantly different impression of [Roberson's] credibility had [appellant's] counsel been permitted to pursue his proposed line of cross-examination." *Id.* Therefore, based on our review of the record, we cannot say that the trial court erred in limiting appellant's cross-examination of

Roberson about the contents of the sealed transcript, especially considering the trial court has wide latitude to limit cross-examination on the basis of a witness's safety. *See Irby*, 327 S.W.3d at 145; *see also Johnson*, 433 S.W.3d at 553-555; *Carpenter v. State*, 979 S.W.2d 633, 635 (Tex. Crim. App. 1998) (en banc) (concluding that the trial court did not err in refusing to allow the defense to cross-examine a witness about pending charges when the defense failed to demonstrate a causal connection between the witness's pending federal charges and his testimony in his state case). Accordingly, we overrule appellant's fourth issue.

## V. EVIDENCE OF SERIOUS BODILY INJURY AND CAR-CHASE EVIDENCE

In his fifth issue, appellant asserts that the trial court abused its discretion by admitting evidence of Pinkie's injuries and appellant's attempts to evade police.

### A. Standard of Review

We review a trial court's admission of evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

### B. Facts

At trial, the State proffered testimony about the injuries Pinkie sustained and appellant's subsequent flight from authorities. Specifically, witnesses testified that

appellant, Pinkie, and Roberson were involved in an argument and that appellant shot Pinkie through a door when he left Pinkie's trailer house. The evidence established that the bullet went through Pinkie's body, causing extensive injuries, and ultimately landed on the couch in the residence. After the incident, appellant fled the scene and engaged in a high-speed chase through multiple counties before finally being stopped by law enforcement in Waller County.

## C. Evidence of Pinkie's Injuries

For several reasons, we cannot say that the trial court abused its discretion in admitting evidence of Pinkie's injuries. First, we emphasize that the State alleged in the indictment that appellant used a firearm that, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Therefore, one of the elements that the State had to prove was whether the victim, Pinkie, was in imminent danger of serious bodily injury when appellant purportedly shot through the door. Section 1.07(a)(46) defines "[s]erious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46) (West Supp. 2014). The State proffered ballistics and crime-scene evidence demonstrating that Pinkie suffered serious bodily injuries—from which she almost died—during the commission of the offense. Because the complained-of evidence addressed an element of the charged offense, we conclude that the evidence was relevant. *See* TEX. R. EVID. 401; *see also Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("The proffered

evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence.").

Additionally, appellant argues that the probative value of the evidence of Pinkie's injuries was outweighed by the prejudicial effect. In particular, appellant complains that the State presented pictures of Pinkie's injuries and scars, her nightgown, the bloody interior of the car occupied by Pinkie, and bloody crime-scene pictures. Although the evidence depicts gruesome and bloody details, they are no more gruesome or bloody than the facts of the case. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2004) (stating that complained-of photographs only showed the victim's injuries and were no more gruesome than expected); *see also Sosa v. State*, 230 S.W.3d 192, 196 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that the prejudice caused by photographs did not substantially outweigh their probative value and noting that the photographs were no more gruesome than the facts of the offense). Furthermore, the complained-of evidence provided a necessary visual component to, and understanding of, witnesses' testimony regarding what they observed regarding the nature and extent of the victim's serious bodily injuries. We therefore conclude that the probative value of the evidence depicting Pinkie's injuries was not substantially outweighed by the alleged prejudice caused. *See* TEX. R. EVID. 403; *see also Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Montgomery*, 810 S.W.2d at 389 (noting that, when a trial court balances the probative value of the evidence against its danger of unfair prejudice, a presumption exists that the evidence will be more probative than prejudicial).

**D.     Evidence of the Car Chase**

Next, appellant complains that the trial court erred in admitting evidence that he fled the scene of the crime and participated in a car chase in Waller County, Texas. We disagree.

"Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn." *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (citations omitted); *see Wachholtz v. State*, 296 S.W.3d 855, 859 (Tex. App.—Amarillo 2009, pet. ref'd) (stating that an effort to escape evinces a consciousness of guilt, which, in turn, is evidence of culpability). "To support the admission of evidence of escape from custody or flight it must appear that the escape or flight have some legal relevance to the offense under prosecution." *Bigby*, 892 S.W.2d at 883 (citations omitted);

Here, the evidence revealed that immediately after shooting and seriously injuring Pinkie, appellant fled from the scene in Brazos County. Appellant's flight continued with a high-speed car chase in Waller County shortly thereafter. Consequently, we conclude that the evidence demonstrated a relationship between the offense and appellant's flight; and as such, we hold that the evidence was admissible to show appellant's consciousness of guilt. *See Bigby*, 892 S.W.3d at 883; *see also Wachholtz*, 296 S.W.3d at 859; *Burks v. State*, 227 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Taking into consideration appellant's concession that he was aware of the police officer's motive to arrest him, we hold that evidence of appellant's flight on seeing the officer wearing the jacket marked 'POLICE' was relevant and admissible to

show, without violating rule 404(b), that appellant was conscious of his guilt."). Therefore, based on the foregoing, we overrule appellant's fifth issue.

## VI.    EVIDENTIARY SUFFICIENCY

In his second issue, appellant contends that the evidence supporting his conviction is insufficient "because the felony offense of deadly conduct does not include an offense where there is bodily injury to another person." Appellant also argues that the evidence is insufficient because the trial court failed to make the State elect between manner and means alleged in separate paragraphs of the indictment, and because "[t]he trailer door was closed, so the State's proof of at or in the direction of individuals with Appellant knowing that Pink[ie] Hardy or David Roberson were inside the habitation is insufficient."

### A.    Standard of Review

"The standard for determining whether the evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)) (emphasis in original); *Brooks v. State*, 323 S.W.3d 893, 898-99 (Tex. Crim. App. 2010) (plurality op.). The factfinder is the exclusive judge of credibility of the witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the factfinder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18,

30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *see Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.    Discussion**

Under section 22.05(b) of the Penal Code, a person commits the offense of deadly conduct by discharge of a firearm "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PENAL CODE ANN. § 22.05(b). Contrary to appellant's assertion, section 22.05(b) does not require the State to prove that the victims were not injured as an element of the offense. *See id.* In fact, most of the cases relied upon by appellant involve a prior iteration of section 22.05, which did not address the offense of deadly conduct by discharging a

firearm. *See generally Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985); *Gallegos v. State*, 548 S.W.2d 50 (Tex. Crim. App. 1977); *Scott v. State*, 861 S.W.2d 440 (Tex. App.—Austin 1993, no pet.). In *Benjamin v. State*, the charged offense involved section 22.05(a), which provides that a person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. *See* 69 S.W.3d 705, 707-08 (Tex. App.—Waco 2002, no pet.); *see also* TEX. PENAL CODE ANN. § 22.05(a). Furthermore, in *Benjamin*, this Court stated that section 22.05(a) applies to those acts that fall short of injuring another. 69 S.W.3d at 708. Nothing in the *Benjamin* opinion states that the same is true for section 22.05(b). *See id.* As such, we are not persuaded by appellant's contention that the evidence is insufficient to support his conviction "because the felony offense of deadly conduct does not include an offense where there is bodily injury to another person."

Appellant also argues that the evidence supporting his conviction is insufficient because the trial court did not require the State to elect between alternative manner and means of committing deadly conduct. In particular, appellant contends that the failure to elect resulted in a misjoinder of offenses that rendered the evidence insufficient. However, appellant does not cite any relevant authority explaining how the purported misjoinder of offenses rendered the evidence insufficient. *See* TEX. R. APP. P. 38.1(i).

In any event, based on our reading of the jury charge, we cannot say that the trial court erred in failing to require the State to elect between alternative methods of committing the same offense. The jury charge provided as follows, in relevant part:

> Now, if you find from the evidence beyond a reasonable doubt that on or about May 28, 2011 in Brazos County, Texas, the defendant, QUINCY BULTER, did then and there knowingly discharge a firearm at or in the direction of one or more individuals; namely: Pinkie Hardy or David Roberson, *or* that the defendant did then and there knowingly discharge a firearm at or in the direction of a habitation, and the defendant was then and there reckless as to whether the habitation was occupied; to wit: by discharging said firearm at a habitation knowing that Pinkie Hardy or David Roberson were inside of said habitation, then you will find the defendant guilty of the offense of Deadly Conduct as charged in the indictment.

(Emphasis added). As provided in section 22.05(b), the language above provided alternative means for committing deadly conduct. The Court of Criminal Appeals has held that the trial court does not commit error by failing to require the State to elect between alternative methods of committing the same offense. *See Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Furthermore, the *Kitchens* Court stated that: "And although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive." 823 S.W.2d at 258. Such is the case here. Therefore, based on the foregoing, we conclude that this contention lacks merit.

And finally, appellant asserts that "[t]he trailer door was closed, so the State's proof of at or in the direction of individuals with Appellant knowing that Pink[ie] Hardy or David Roberson were inside the habitation is insufficient." We disagree that the fact that the trailer door was closed somehow renders the evidence insufficient.

Donita Williams, Pinkie's cousin, testified that she was present at Pinkie's trailer house on the night in question. Williams observed a white Chevrolet Malibu, which was later identified as appellant's car, parked nearby. Williams testified that the door

to the trailer was closed when she heard a gunshot. Williams then heard Pinkie screaming, "My baby, my baby," and saw the shooter get in the Malibu "and just casually drove off like nothing happened."

Pinkie noted that she and Roberson got into an argument at her trailer house the night of the shooting. Appellant was also present at the trailer house. Initially, Pinkie told Roberson to leave, but he refused to do so. Thereafter, appellant came out of a bedroom holding a gun and began arguing with Roberson. At this point, Pinkie asked appellant to leave. Appellant complied, and Pinkie shut the door to the trailer house. Through the peep hole in the door, Pinkie watched appellant make his way towards the white Malibu. Pinkie and Roberson continued their argument until Pinkie heard a gunshot. Pinkie testified that she immediately felt a burning pain and exclaimed, "He shot me in my pussy."

Roberson testified that, on the night in question, he saw a white vehicle parked near Pinkie's trailer house. Roberson also noted that he and Pinkie were arguing on the night in question and that appellant eventually got involved in the argument. While appellant and Roberson yelled insults at one another, Roberson saw a black semi-automatic handgun in appellant's hand. Appellant held the gun at his side. Roberson recalled that Pinkie asked appellant to leave the trailer house and that appellant did so. Once appellant left the trailer house, Roberson closed and locked the door. Then, Roberson and Pinkie resumed their argument; however, shortly thereafter, Roberson heard a gunshot and saw Pinkie fall to her knees with blood "shooting out" from her leg. Roberson picked up Pinkie, kicked open the door, and searched for a vehicle to

transport Pinkie to the hospital. When Roberson opened the door, he saw appellant. Roberson told appellant, "put her in the motherfucking car. You shot her." Appellant stood beside the white Malibu with his hands on the top of the car and with the gun in one hand. Roberson then ran next door. At that time, Roberson recalled hearing tires squeal and seeing appellant drive away.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined that: (1) the door to the trailer house was closed at the time appellant fired the gun; (2) appellant, who had been involved in an argument at the trailer house, knowingly discharged a firearm at or in the direction of Pinkie and Roberson; and (3) appellant was reckless as to whether the habitation was occupied when he fired the shot. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012). Accordingly, we hold that the record contains sufficient evidence to support appellant's conviction for engaging in deadly conduct by discharging a firearm. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 364 S.W.3d at 293-94. We overrule appellant's second issue.

## VII.   CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed January 8, 2015
Do not publish
[CRPM]

